**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNIVERSITY OF PITTSBURGH OF THE
COMMONWEALTH SYSTEM OF HIGHER
EDUCATION,                                                          08cv1307
              Plaintiff,                              **ELECTRONICALLY FILED**

    v.

VARIAN MEDICAL SYSTEMS, INC.,
              Defendant.


## MEMORANDUM OPINION ON PRETRIAL MOTIONS IN LIMINE

### I.     Introduction/Procedural History

This is an action in patent infringement.  Plaintiff, University of Pittsburgh of the

Commonwealth System of Higher Education (hereinafter "Pitt" or "plaintiff"), alleges that

defendant, Varian Medical Systems, Inc. (hereinafter "Varian" or "defendant") has infringed its

patent (U.S. Patent No. 5,727,554) (hereinafter "the patent," or "the '554 Patent"), by making

and selling the RPM Respiratory Gating System (hereinafter "the RPM System").  Defendant

filed an Answer and Counterclaim, seeking a declaration that the claims of the '554 Patent are

invalid, and that the products of Varian do not infringe any of the asserted claims of the '554

Patent, and asserted numerous defenses including failure to state a claim, patent invalidity,

estoppel, laches, and authorization and consent of the United States Government (doc. no. 355).

This lawsuit has a long and storied procedural history dating back to June 16, 2008,[1]

when Pitt filed the instant action against Varian alleging that Varian's product, the RPM Gating

System, which is radiotherapy equipment for the treatment of cancer, infringes Pitt's '554 Patent,

---

[1] This action was originally filed in the Northern District of California (3:08-cv-02973) and,
upon motion of defendant, was transferred to this Court. *Univ. of Pittsburgh v. Varian Med. Sys.
Inc.*, 2008 U.S. Dist. LEXIS 108783 (N.D. Cal. Sept. 16, 2008).

which also concerns an application for radiation therapy.  This lawsuit ("*Varian II*") is the

second action which Pitt has commenced against Varian claiming an alleged infringement of the

'554 patent.  This Court dismissed the first action ("*Varian I*") for lack of standing.  *Univ. of*

*Pittsburgh v. Varian Med. Sys. Inc.,* 2008 U.S. Dist. LEXIS 36098 (W.D. Pa. April 30, 2008).

During the pendency of the appeal to the United States Court of Appeals for the Federal Circuit

in *Varian I*, Pitt filed the instant action (*Varian II*).  This Court dismissed *Varian II* on *res*

*judicata* grounds.  *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 630 F.Supp.2d 576 (W.D. Pa.

2008).  Pitt then appealed this decision (doc. no. 120).  While *Varian II* was on appeal, the Court

of Appeals reversed this Court's judgment and remanded *Varian I.  Univ. of Pittsburgh v. Varian*

*Med. Sys. Inc.*, 569 F.3d 1328 (Fed. Cir. 2009).  The parties then reached an agreement pursuant

to which the dismissal of *Varian II* would be vacated, the appeal in *Varian II* would be

dismissed, and this case would proceeds on the merits (doc. no. 152).  *See also Univ. of*

*Pittsburgh v. Varian Med. Sys. Inc.*, 2010 U.S. App. LEXIS 9542 (Fed. Cir. Apr. 27, 2010)**.**

　　　　During the pendency of the appeals in *Varian I* and *II,* Varian filed an *ex parte* request

with the United States Patent and Trademark Office  ("PTO") requesting a reexamination of all

of the "disputed" claims.  The PTO reexamined the '554 Patent in light of the prior art, which

Varian claimed rendered the disputed patent claims invalid.  The PTO issued a reexamination

certificate confirming the claims that were under reexamination, and added additional patent

claims (Claims 23-28) that Pitt had submitted during the reexamination proceedings.  At the

conclusion of the reexamination proceedings, Claims 20-22 of the '554 Patent were deemed

valid.

　　　　By Order of this Court of June 18, 2010 (doc. no. 182), pursuant to Fed. R. Civ. P. 53,

this Court appointed the Honorable Donald E. Ziegler as Special Master in this action to conduct

a claim construction hearing, and to set forth his findings in a Report and Recommendation, which the Court received on April 6, 2011. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.,* 2011 U.S. Dist. LEXIS 52078 (W.D. Pa. Apr. 6, 2011). After hearing the objections of the parties, and the motions to adopt/modify the Report and Recommendation, this Court issued a Memorandum Opinion and Order thereon. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2011 U.S. Dist. LEXIS 52059 (W.D. Pa. May 16, 2011); doc. no. 303**.** This Court affirmed and adopted the Report and Recommendation of the Special Master as the Opinion of the Court with only three (3) modifications (doc. no. 303).

After a status conference, the parties then filed cross-motions for summary judgment which were fully briefed on December 20, 2011. Pitt moved for partial summary judgment (as to liability) on the basis that: (1) Varian's RPM System infringes Claim 20 of the '554 Patent as a matter of law; (2) the RPM System infringes Claims 21, 25, 26 and 36 of the '554 Patent as a matter of law; and (3) the combination of the RPM System and Clinac and Trilogy Linear Accelerators infringes Claims 38 and 22 of the '554 Patent.  Doc. No. 363.

Varian, on the other hand, moved for summary judgment on the grounds of invalidity for lack of enablement, lack of damages (Entire Market Value Rule allegedly precludes Pitt from obtaining royalties on sales of linear accelerators), non-infringement due to "incapacity" (which was subject of Pitt's previously granted Motion to Strike), non-infringement of the redesigned (or modified) RPM System, and willfulness. Doc. No. 364.

The Court granted Pitt's Motion for Partial Summary Judgment, finding infringement as a matter of law.  The Court also denied Varian's Motion for Summary Judgment regarding invalidity, denied Varian's Motion for Summary Judgment regarding damages, found the redesigned RPM System infringes as a matter of law (literally and under the doctrine of

equivalents), and struck Varian's belated defense of non-infringement due to "incapacity." *Univ. of Pittsburgh v. Varian Med. Sys. Inc*., 2011 U.S. Dist. LEXIS 149685 (W.D. Pa. Dec. 30, 2011).

The Court also found that the issue of willfulness should proceed before a jury, and thus the Court denied Varian's Motion for Summary Judgment as to the issue of willfulness. *Id*. On December 21, 2011, the same day this Court entered an Order granting Pitt's Motion for (Partial) Summary Judgment and denying Varian's Motion for Summary Judgment, this Court also issued a Pretrial Order setting a trial on the issue of willfulness (see Section II below) to commence on January 23, 2012.

The trial on willfulness concluded on January 26, 2011, with a verdict in favor of Pitt and against Varian on all issues before the jury.  The second part of the trial (damages) is scheduled to commence on February 21, 2012 (doc. no. 452), and part three of the trial (invalidity) is scheduled to commence on April 16, 2012 (doc. no. 543).  Currently pending before this Court are several motions in limine/pretrial motions (doc. nos. 560, 567, 554, 559, 563 and 565), all of which will be addressed in this Opinion.

## II.    One Trial in Three Parts

In accordance with Fed. R. Civ. P. 42(b), at the conclusion of the summary judgment proceedings, instead of scheduling one lengthy and cumbersome jury trial on all remaining issues before this Court (willfulness, damages, invalidity, etc.), the Court instead exercised its discretion to break the trial of this matter into three (3) discreet subparts, and ultimately decided the entire trial should be tried before the same jury.  *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (Fed. Cir. 1987) (holding that "[A] separation [of issues in patent litigation] is precisely the type contemplated by Rule 42(b) and does not run afoul of the Seventh Amendment.")  Consistent therewith, the Court set forth three separate Pretrial Orders (doc. nos.

426, 452 and 543), after consulting with the parties on the order or secession of the issues to be presented to the jury on several occasions.  The Court selected the issue of willfulness as the first trial issue, primarily because defendant had taken the position in its summary judgment filings that the issue of willfulness was so clear and uncomplicated, and that defendant was entitled to summary judgment on this basis.

Although the Court did not ultimately agree with defendant's position on summary judgment, and ruled instead that numerous issues of fact were present such that a summary judgment finding in defendant's was not appropriate, the Court also believed, and continues to believe, that the issue of willfulness was an appropriate topic upon which to begin the jury trial in this case (and as previously discussed by this Court during conference, if anything, would have been an issue that would be favorable to Varian, given the heightened burden of proof) (see doc. no. 442 at 5-8, Transcript of January 4, 2012 Status Conference).

Much to the surprise of this Court, defendant appeared to change course from its prior position on summary judgment (that willfulness was an issue on which defendant had a strong argument on the merits), and on December 23, 2011, filed a motion for reconsideration and to stay the trial of this matter (doc. no. 428).  Within that motion, defendant seemed to be taking the position that a trial on willfulness should come *after* any determination on invalidity.  In an attempt to heed the advice of, and give deference to, the parties, at the January 13, 2012 Preliminary Pretrial Conference, the Court offered Varian the option to combine the portion of the trial dealing with invalidity defenses with the willfulness trial, but Varian responded "there would be no way to do it."  *In re Varian Med. Sys. Inc.*, 2012 U.S. App. LEXIS 1196, at *3 (Fed. Cir. Jan. 20, 2012).

Then, on January 15, 2012, Varian filed a motion for the Court to certify the issue for interlocutory appeal, and contended that "allowing a trial on willful infringement in a circumstance where a defendant is not allowed to meaningfully present invalidity evidence violates defendant's due process and Seventh Amendment rights." Doc. No. 468 at 6. Varian went on to state that an invalidity trial was necessary prior to a willfulness trial because it would help to avoid inconsistent verdicts, would clarify defendant's rights, and it would materially advance the ultimate termination of the litigation. On January 18, 2012, this Court entered an Order denying Varian's motion to certify an interlocutory appeal. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2012 U.S. Dist. LEXIS 5720 (W.D. Pa. Jan. 18, 2012).

Then, on the eve of trial, Varian filed a Petition for Writ of Mandamus before the United States Court of Appeals for the Federal Circuit, seeking a last minute stay of the first part of the trial (the willfulness subpart), and a ruling that defendant's invalidity defenses be tried to the jury prior to any determination on willfulness. However, as the Federal Circuit Court of Appeals aptly pointed out in its Order denying Mandamus, "the district court offered a trial on invalidity and Varian refused. . . ." *In re Varian*, 2012 U.S. App. LEXIS 1196, at *5. Despite the prior offers of this Court to combine the willfulness trial with the invalidity trial, perplexingly Varian declined this Court's attempt to accommodate Varian.

The jury trial on willfulness commenced on January 23, 2012, and the jury began (and concluded) deliberations on January 26, 2012. Upon the conclusion of the willfulness trial, and while the jury was still deliberating, during a status conference on January 26, 2012, the Court again sought the positions of the parties (while stating on the record that it would give the position of Varian due weight) about whether the parties (especially Varian) would prefer to try the invalidity defenses *prior* to the damages trial, currently scheduled for February 21, 2012.

While Pitt took the position that it would be amenable to trying the invalidity portion of the trial prior to damages, again to the surprise of this Court, Varian orally responded that it *did not* wish to conduct the invalidity portion of the trial prior to the damages portion of the trial (a position which would seem inconsistent with Varian's prior positions before this Court and the Court of Appeals for the Federal Circuit that invalidity determinations should have been put before the jury prior to willfulness/damages) (see doc. no. 573 at 3, Transcript of January 26, 2012 Status Conference).

Most recently, by Text Order of Court of February 3, 2012, the Court stated as follows:

> Since the remaining portions of the jury trial (i.e. damages, set to begin 2/21/2012, and invalidity defenses, set to begin 4/16/2012) are the continuation of the prior willfulness portion of the trial, and are before the same jury, the evidence previously offered in the willfulness trial is part of the remaining portions of this trial.  Therefore, evidence previously offered to the jury need not be re-addressed in the forthcoming damage and invalidity trials.  See Fed. R. Civ. Pro. 1 (The rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.")

In sum, the Court believes that this case was better suited to be tried in three distinct subparts, and exercised its discretion under Fed. R. Civ. P. 42(b) to do so.  In essence though, since the Court is employing the same jury for all three subparts, these subparts actually constitute one trial.  By ordering the trial in this manner, the Court has built in lapses of time, whereby the attorneys, and the Court, are given more time to prepare each subpart, and the jury has been relieved of the responsibility of determining all of the issues in one trial, after having been presented with a rather unwieldy amount of evidence, and an extraordinarily long set of jury instructions, and verdict slip.

**III.     Defendant's Motion to Seat New Jury For Damages Trial (doc. no. 563)**

Defendant now seeks to seat an entirely new jury and alleges that there is a danger of unfair prejudice because the jury will be unable to dispassionately decide the issue of compensatory damages without taking into consideration their prior findings of willful infringement.

As explained immediately hereinabove (Section II), although the trial of this matter has been split into three distinct subsections or subparts, the trial of this matter still only really constitutes one trial, with the same jury.  The Court, within its discretion and after consulting with the parties on numerous occasions (as discussed above), split the trial of this case into three (3) subparts in order to give the attorney's more time to prepare each segment of the trial, and to hopefully reduce the overall length of the trial time by narrowly tailoring the issues to be tried in each subpart.  *See* Fed. R. Civ. P. 1; *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004) (citing *Canister Co. v. Leahy*, 182 F.2d 510, 514 (3d Cir. 1950)) (holding that the Federal Rules of Civil Procedure are interdependent).

The Court has also chosen to keep the same jury so as to avoid the inefficiency of having to select three (3) separate juries, who would each be required to learn anew the technology at issue, not to mention the intricate details of patent law.  Thus, to select two new juries (one for damages, and one for invalidity) for the remaining subparts of the trial, would result in great duplication and inefficiency.

Simply put, the Court ordered the trial in this manner as an exercise of its discretion. Fed. R. Civ. P. 42(b).  Another equally permissible exercise of this Court's discretion could have

been to try the entire case in one lengthy and exhausting trial, and all the issues still would have been before the same jury anyway.  *Id.*

Accordingly, to the extent that defendant now argues that requiring the same jury to decide issues of compensatory damages after having ruled on willfulness would be prejudicial, this Court does not agree.  Defendant is in the same position, and certainly no worse of a position from a "prejudice" perspective than it would have been had the Court decided (as is the most common practice) to allow a trial of the entire case at one time.  The lengthy verdict slip would have then included willfulness questions as well as damages and invalidity.  Thus, there is no increased risk of undue prejudice by employing the same jury to consider damages, and invalidity.

## IV.    Damages

### (A) Plaintiff's Expert Report – John Hansen

In Pitt's expert report on damages (and two subsequent submissions), John Hansen, of TM Financial Forensics, calculated what he believes the outcome of a hypothetical license negotiation between Varian and Pitt would have been prior to the infringement.  Doc. No. 314. Mr. Hansen made the assumption that there was no uncertainty as to the validity of the '554 patent or whether Varian infringed the '554 patent.  Mr. Hansen then employed the factors set forth in the seminal case of *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), to calculate a reasonable royalty rate.  Mr. Hansen determined that after considering all of the *Georgia-Pacific* factors, a reasonable royalty rate on the RPM system alone would be 12% of net sales, and that a reasonable royalty on the linear accelerators (Clinac and Trilogy) would be between 1% and 3%.

Therefore, consistent with the prior rulings of this Court in its Memorandum Opinion on Summary Judgment, *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at *45-47, Mr. Hansen calculated a royalty or license rate in all three (3) product lines (RPM Gating System, Clinac and Trilogy accelerators).  The total royalty he calculated, through his report(s), was $30,349,000 - $63,401,000.

### (B) Defendant's Expert Report – Bruce McFarlane

In Varian's expert report on damages (and one subsequent submission), Bruce McFarlane, of LitiNomics, also calculated what he believes the outcome of a hypothetical license negotiation between Varian and Pitt would have been prior to the infringement.  Doc. No. 329. Mr. McFarlane also assumed that there was no uncertainty as to the validity of the '554 patent or whether Varian infringed the '554 patent.  Mr. McFarlane's expert report had different sections because of the uncertainty with respect to how the Court would rule on certain issues.

The part of Mr. McFarlane's report that is relevant in light of the Court's previous holdings (and holdings in this opinion) is Section 17.  Doc. No. 329, at 85. The first thing that he did was to go through previous Varian license agreements with outside organizations and then previous Pitt license agreements with outside organizations.  This set a baseline royalty rate of 1.5% that he then adjusted upwards after consideration of the *Georgia-Pacific* factors for a final royalty rate of 2% for RPM systems.  Unlike Pitt's expert, Mr. McFarlane based his calculation *only* on the RPM Gating System, and he did not consider a royalty rate for the linear accelerators.  The total royalty he calculated, through his report, was $2,304,000.

**(C) Plaintiff's Omnibus Motion in Limine to Exclude Evidence From Trial on the Issue of Damages (doc. no. 560)**

Pitt has filed an Omnibus Motion in Limine (doc. no. 560), and Varian has filed its Response thereto (doc. no. 588).  Pitt's arguments will be addressed *seriatim.*

(1)  Pitt first argues that Varian should be precluded from offering evidence and argument that non-treatment RPMs should be excluded from the royalty base.  Pitt correctly notes that this Court already found in the Memorandum Opinion on Summary Judgment, *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at \*52-54, that the Non-Treatment RPMs infringe the '554 patent under the Doctrine of Equivalents.  Accordingly, the Court hereby GRANTS Subpart I of the Motion in Limine.

(2)  Second, Pitt contends that Varian should be precluded from offering evidence and argument regarding the parties' pre-lawsuit license negotiations.  The Court finds that under factor 15 of *Georgia-Pacific*, any evidence bearing on the amount Varian would have been willing to pay, and the amount Pitt would have been willing to accept, for a license for the '554 patent is relevant to the result of a hypothetical negotiation that would have occurred prior to infringement.

Pitt argues that because the issues of validity and infringement had not been decided at the point of the pre-lawsuit negotiations that this evidence should not be admitted pursuant to Fed. R. Evid. 403.  However, Pitt's own expert (Mr. Hansen) used license agreements that were negotiated prior to a patent being even issued, much less after a final determination on validity and infringement.  Mr. Hansen then (appropriately) points out that these license figures should be adjusted upwards because of the certainty of validity and infringement that is assumed during the hypothetical negotiation for a reasonable royalty.

The pre-lawsuit negotiations can serve as a baseline from which the jury can adjust upwards (or downwards) depending on the *Georgia-Pacific* factors.  Pitt is free to cross-examine Mr. McFarlane on this subject during the damages phase of the trial.  Accordingly, the Court hereby DENIES Subpart II of Pitt's Omnibus Motion in Limine (doc. no. 560).

(3)  Third, Pitt argues that Varian should be precluded from offering evidence and argument that its alleged "foreign sales" should be excluded from the royalty base.  Varian sought summary judgment on this issue, and the Court, in the Memorandum Opinion on Summary Judgment, already found that there is no legitimate dispute that the RPM System and the accelerators are made and sold in the United States based upon the submissions of the parties during the summary judgment proceedings.  *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at *12.  The accused products are "made" in the United States for purposes of direct patent infringement when someone "without authority makes, uses, offers to sell, or sells any patented invention, within the United States."  35 U.S.C. § 271(a).  Accordingly, the Court hereby GRANTS Subpart III of Pitt's Omnibus Motion in Limine (doc. no. 560).

(4) Fourth, Pitt contends that Varian should be precluded from offering evidence and argument regarding its proposed re-design of the RPM System.  Varian sought summary judgment on this issue, and the Court, in its Memorandum Opinion on Summary Judgment, previously held that Varian's proposed modification infringes the '554 patent both literally and under the Doctrine of Equivalents.  *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at *55-64.  Therefore, all of Varian's expert (Mr. McFarlane's) opinions and any other related evidence/testimony, which is reliant upon the availability of a non-infringing design change, will be excluded as not relevant (under Fed. R. Evid. 402), and prejudicial (under Fed. R. Evid. 403).

Accordingly, the Court hereby GRANTS Subpart IV of Pitt's Omnibus Motion in Limine (doc. no. 560).

(5) Fifth, and finally, Pitt argues that Varian should be precluded from offering evidence and argument concerning a royalty rate on linear accelerators sold in combination with the RPM System.  There are two ways that Varian could attempt to offer evidence and argument concerning the royalty rate to be applied to the linear accelerators.  First, Varian could argue that the linear accelerators should not be included in the royalty base at all.  However, the Court has ruled herein that the linear accelerators can be included in the royalty base.  *See infra* section (IV)(D); *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685, at *45-47.  Secondly, Varian could attempt to present evidence/testimony by their expert, Mr. McFarlane, as to what the royalty rate for the linear accelerators should be.  However, Fed. R. Civ. P. 26(a)(2)(D) provides that such an opinion would have to be disclosed in Mr. McFarlane's report sufficiently in advance of trial. Mr. McFarlane's report does not include any calculation as to what a reasonable royalty for the linear accelerators should be.  Accordingly, the Court hereby GRANTS Subpart V of Pitt's Omnibus Motion in Limine (doc. no. 560).

**(D)  Defendant's Motion In Limine to Exclude Sales of Clinac and Trilogy Linear Accelerators From Royalty Base Under Entire Market Value Rule and to Exclude Evidence Or Argument Concerning Linear Accelerator Sales (doc. no. 567)**

Varian has filed a Motion In Limine to Exclude Sales of Clinac and Trilogy Linear Accelerators From Royalty Base Under Entire Market Value Rule ("EMVR") and to Exclude Evidence or Argument Concerning Linear Accelerator Sales (doc. no. 567), and Pitt's has filed its response thereto (doc. no. 592).[2]

---

[2] In the Memorandum Opinion on Summary Judgment, *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at *5455, the Court stated as follows: "Varian argues that the revenues from the

### (1)    EMVR Standard

A patentee is entitled to damages that adequately compensate it for the infringement.  35

U.S.C. § 284.  In determining the proper royalty base for a reasonable royalty calculation the

nature of the patented invention in relation to the accused product or products must be examined.

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1336–37 (Fed. Cir. 2009).  When a

reasonable royalty[3] on the patented product does not adequately compensate the patentee for the

infringement then the royalty base can include unpatented products that are sold in combination

with the patented product.  *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1318 (Fed. Cir.

2011).  In order to include the unpatented product in the royalty base, the following three-part

test must be met:

> (1) the allegedly infringing components must be the basis for customer demand for
> the entire system, including the parts beyond the claimed invention;

> (2) the infringing and non-infringing components must be sold together so that they
> constitute a functional unit or are parts of a complete machine; and

---

linear accelerator must be excluded from the royalty base under the Entire Market Value Rule
and that the revenues from sales of the RPM designed for use with PET and CT scanners must be
excluded from the royalty base because that RPM device does not infringe any asserted claims of
the '554 Patent. The Court finds that the first point should be argued before a jury, and the
second point is really an attempt to re-argue liability (which liability rulings have already been
made against Varian). *The Court will re-visit this issue at the trial on damages during the
motions in limine phase*." The Court finds that the applicability (or, more accurately,
inapplicability of the EMVR) is appropriate to be addressed and ruled upon during the instant
Motions in Limine process.

[3] In this case, Pitt does not make any products that compete with the RPM System and/or the
accelerators at issue and is therefore not entitled to lost profits damages.  Both expert reports
acknowledge this fact and, accordingly, attempt to calculate a reasonable royalty rate (albeit
Pitt's expert report calculates based upon all three product lines, while Varian's expert only uses
the RPM System in its calculations).

(3) the infringing and non-infringing components must be analogous to a single functioning unit.

*Cornell Univ. v. Hewlett-Packard Co.,* 609 F.Supp.2d 279, 286-87 (N.D.N.Y. 2009) (Rader, J. sitting by designation) (citing cases).

Varian argues that sales of its linear accelerators should be excluded from the royalty base considered during the trial on damages because of the EMVR.  Varian contends that the EMVR applies in this case because, Varian claims that the linear accelerators are not a part of the invention that is covered by the '554 patent.  Varian argues that the linear accelerators are prior art that are only mentioned in Claims 22 and 38 of the '554 patent and that this "artful drafting" cannot serve as a basis to expand the royalty base. Varian further argues that Pitt cannot meet the three-prong test under the EMVR to include the linear accelerators in the royalty base.

Pitt argues that the EMVR *only* applies to unpatented components of an apparatus. Pitt argues that the EMVR *does not apply* in this case because the linear accelerators are part of the apparatus that was found to infringe Claims 22 and 38 of the '554 patent.  Pitt contends that the royalty rate it is seeking properly accounts for the novel features of the claimed invention under *Georgia-Pacific*.  For the reasons, set forth immediately, hereinbelow, this Court agrees.

### (2)    The EMVR Does Not Apply

The United States Court of Appeals for the Federal Circuit has repeatedly held, and Varian acknowledges in its brief, that the EMVR only applies when unpatented products are combined with patented products.  *Uniloc,* 632 F.3d at 1318.  Varian argues that the linear accelerators are unpatented products and that the only patented part of the invention is the RPM System itself.  The Court disagrees and believes that the linear accelerators are part of the patented product.  In particular, the Court finds that Claims 22 and 38 of the '554 patent include the linear accelerators as part of the patented product.

**(a)** **Claims 22 and 38 Require a Linear Accelerator**

The parties do not dispute that Claim 38 of the '554 patent requires the use of a beam generator;[4] however, they do dispute whether Claim 22 of the '554 patent requires the use of a beam generator. In the Memorandum Opinion on Summary Judgment, this Court has already ruled that Claim 22 does in fact include a beam generator. *Univ. of Pittsburgh*, 2011 U.S. Dist. LEXIS 149685 at *46-47. However, Varian has renewed its objection to that finding and the Court will again address the issue (in greater detail). Claim 22 of the '554 patent states:

> The apparatus of claim 20 adapted for use during treatment of said patient with a radiation beam generated by a beam generator, wherein said gating means comprises means generating gating signals synchronized to actuate said beam generator in synchronism with patient breathing.

Varian argues that Claim 22 does not include a beam generator as a claim element. Varian contends that the phrase "adapted for use" means that the beam generator need not be present during treatment but only that the RPM System be so adapted as to be capable of interacting with a beam generator. If Claim 22 only comprised the first two lines above, Varian would be correct; however, the last two lines of Claim 22 make it clear that Claim 22 requires that the beam generator be actuated by the RPM System. This cannot be accomplished if the beam generator is not present during the treatment of the patient.

The case of *3M Co. v. Mohan*, 2010 U.S. Dist. LEXIS 81094 (D. Minn. 2010), which is the only case upon which Varian relies for its proposition that the beam generator is not a part of the apparatus of Claim 22, is handily distinguishable from this case. In *3M*, the claim at issue, Claim 8, did not specify the use of the stethoscope anywhere in the claim except immediately

---

[4] The beam generator is one of the components of the linear accelerators at issue in this case.

following the "adapted for use" clause and in describing how difficult the tip should be to remove from the stethoscope. *Id.*

In this case, in sharp contrast to the claim at issue in *3M*, Claim 22 *specifically mentions* that the apparatus comprises the gating system actuating the beam generator. This is not merely a phrase describing how the RPM System is to be manufactured in case it is connected to the beam generator. Rather, it is a phrase that is critical to describing the apparatus that is being patented.

Furthermore, the line of cases upon which *3M* relies points towards a finding that the beam generator should be considered as part of the patented apparatus. For example, in *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002), the United States Court of Appeals for the Federal Circuit held that a perambulatory clause can be used in some instances to "define, in part, the claimed invention." *Id.* After reviewing the entire patent, the Court finds this case to be one of those instances. The preamble of Claim 22 is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Claim 22 deals specifically with the treatment of patients and not their "theoretical" treatment like other claims of the '554 patent. Thus, in order for the patients to undergo treatment by the RPM System, a beam generator must be present in the room.

**(b)    The Linear Accelerators are Part of the Patented Apparatus**

Varian argues that the effect of not applying the EMVR in this case is that the patent for respiratory gating is turned into a patent for linear accelerators. That is simply not the case. If Varian were to stop selling the RPM System and were to *only* sell the linear accelerators, it would not be infringing the '554 patent. However, the reality is, Varian *is* selling the RPM System and the linear accelerators, which the Court has previously found infringes claims 22 and

17

38 of the '554 patent. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2011 U.S. Dist. LEXIS 149685, at *45-47 (W.D. Pa. Dec. 30, 2011).

The Court held that the linear accelerators were a critical component of the infringing apparatus for Claims 22 and 38 and not just an accessory that is used in conjunction with the RPM System. *Id*. It is important to note that many components of the RPM System are not patented by Pitt but Varian does not argue that those components should be excluded from the royalty base. For example, the processor that is being used to process the signals coming from the camera has not been patented by Pitt. Thus, the Court surmises that the primary reason that Varian is arguing that the linear accelerators are not a part of the patented apparatus is because of the impact that including the linear accelerators will have on damages. However, because the Court has concluded the linear accelerators are a part of the patented apparatus and not just a mere accessory, the added value of the linear accelerators may be used in determining the royalty base.

Varian argues that this result would be akin to including the price of a TV in the royalty base for a patented DVR that mentions the TV in one of the patent claims. However, this analogy is inopposite. The current case is more akin to a TV that has a built in DVR. In that case, the TV is a critical component of the whole patented apparatus and the TV may be included in the royalty base.

### (3)     Defendant's Other Arguments for Excluding Linear Accelerators

#### (a) Expanding the Royalty Base Does Not Lead to an Unreasonable Royalty

Varian's contention that an inclusion of the linear accelerators as part of the royalty base would lead to an effective royalty of over 50% for the RPM System is simply not true. Pitt's

expert is only proposing a royalty of 12% on the RPM Systems that Varian has sold, and continues to sell.  Although this percentage is significantly higher than the 2% that Varian's expert proposes, it is not over 50% royalty.  The additional royalties that Varian would be forced to pay if the jury were to adopt Pitt's expert's recommendation accounts for the value added to the invention by the linear accelerator as part of Claims 22 and 38.

### (b) The Linear Accelerators "Other Features" Do Not Exclude Them From the Royalty Base

Next, Varian argues that, because the linear accelerators at issue in this case perform more tasks than simply generating a beam for use with the RPM System, they must be excluded from the royalty base.  If taken literally, Varian's argument would prohibit a patentee from receiving royalties from almost any invention.  The only thing that royalties could be collected on would be new elements.  For example, in the present case, the RPM System has a camera that could be used for other purposes.  This does not mean that the cost of the camera should be excluded from the royalty base.

### (c) Damages From a Dependent Claim Can Exceed Those of an Independent Claim

Finally, Varian argues that the damages that are awarded from infringement of a dependent claim cannot exceed those that are awarded from infringement of the independent claim from which it is derived.  In support of its proposition, Varian cites only a footnote from *Wahpeton Canvas Co. v. Frontier, Inc*., 870 F.2d 1546, 1553 n.10 (Fed. Cir. 1989).  This Court will decline Varian's invitation to extend the *dicta* in *Wahpeton* into the promulgation of a rule of law by the Court of Appeals for the Federal Circuit.

### (4)     Conclusion

In sum, this Court finds that the Entire Market Value Rule (EMVR) does not apply in the present case.  Accordingly, Varian's Motion In Limine to Exclude Sales of Clinac and Trilogy Linear Accelerators From Royalty Base Under Entire Market Value Rule and to Exclude Evidence Or Argument Concerning Linear Accelerator Sales (doc. no. 567) is DENIED.

### (E)     Defendant's Motion in Limine to Bar the Testimony of John Hansen (doc. no. 554)

Varian has filed Motion In Limine to Bar the Testimony of John Hansen (doc. no. 554) and Pitt has responded thereto (doc. no. 589).  Varian raises two main objections to the qualification of Mr. Hansen under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137 (1999).  Varian argues that Mr. Hansen is not qualified and thus should be barred from testifying under *Daubert* and *Kumho*, on the basis that: 1) he improperly employed the 25% rule; 2) he improperly considered the license between Texas and Nomos; and, 3) he improperly failed to consider the parties prior license negotiations.

### (1)     Mr. Hansen Did Not Use the 25% Rule

The 25% rule of thumb means that the "licensee pay a royalty rate equivalent to 25 percent of its expected profits for the product that incorporates the IP at issue." *Uniloc*, 632 F.3d at 1313 (citation omitted).  In *Uniloc*, the Court of Appeals for the Federal Circuit rejected the use of the 25% rule of thumb and held that it may not be used by experts to determine what a reasonable royalty would be under *Georgia-Pacific*.  *Id*. at 1315.

Contrary to the assertions of Varian, the Court finds that Mr. Hansen did not use the 25% rule. As Varian emphasizes, its own damages expert challenged Mr. Hansen's calculation of the appropriate royalty rate.  Mr. Hansen replied, in his rebuttal report, that he did not use the 25% rule of thumb to calculate the appropriate royalty rate to be used in this case.  Doc. No. 335, ¶¶

26-29. There is no evidence in the record to support Varian's allegation that he did in fact use the 25% rule of thumb. The Court finds there is no reason to disbelief Mr. Hansen when he states that he did not use the 25% rule of thumb. However, Varian is free to cross-examine Mr. Hansen on this subject during the damages phase of the trial.

(2)   <strong>The Texas/Nomos License Relied Upon by Mr. Hansen is Relevant</strong>

The Court finds that Mr. Hansen's limited use of the Texas/Nomos licensing agreement was relevant and appropriate in calculating a reasonable royalty rate in this case. There is no reason to exclude this evidence based upon Varian's assertion that the only reason this license was included was because of the high royalty rate. Although the license was exclusive, which points to the royalty rate being higher than in this case, there are several factors that point to the royalty rate in this case being higher. For example, the license between Texas and Nomos was for a pending patent. The patent had not yet been issued, much less had an *ex parte* reexamination occurred. Additionally, there was no certainty that the patent was valid and being infringed – which is the assumption during a damages trial. Although not a respiratory gating patent, the patent application at issue in the Texas/Nomos license did deal with radiation therapy by one of Varian's major rivals. The patent application was not "radically different" than the patent-in-suit. Again, Varian is free to cross-examine Mr. Hansen on this subject during the damages phase of the trial.

(3)   <strong>Mr. Hansen Was Not Required to Consider the Pre-Suit Negotiations</strong>

Although this Court has ruled that the pre-lawsuit negotiations may be considered by the jury (*supra* part (IV)(C)(2)), Mr. Hansen's decision not to consider the pre-lawsuit negotiations does not bar his testimony. In this case, there were hundreds, if not thousands, of possible licenses that could have been considered by the experts in their reports. Each expert made

21

decisions on which licenses to consider in their report and which ones not to consider.  This case

is easily distinguished from *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), in

which the Federal Circuit discussed the consideration of *actual* licenses for the patent-in-suit.

The current suit deals with license *negotiations* for the patent-in-suit.  The license negotiations

between Pitt and Varian differed in important ways from the hypothetical negotiation that is at

issue during the damages trial.  Therefore, the failure to consider the pre-lawsuit negotiations

between Pitt and Varian would not justify taking the action of barring Mr. Hansen from

testifying.

### (4)     Conclusion

In sum, the Court finds that Mr. Hansen's testimony handily meets the *Daubert* standard.

Accordingly, Varian's Motion In Limine to Bar the Testimony of John Hansen (doc. no. 554) is

DENIED.

### V.     Defendant's Motion In Limine to Include the Issue of Laches as Part of the Damages Trial (doc. no. 557)

Varian's seeks to include the Issue of Laches as Part of the Damages phase of the trial,

and files a Motion In Limine in support thereof.  Doc. No. 557.  Pitt has objected to the issue

being put before the jury, either for final deposition or in an advisory role.  Doc. No. 587.  The

defense of laches is an equitable one, and thus is to be ruled upon by the Court.  *A.C. Auckerman*

*Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (*en banc*) (citing cases).

Varian has cited no case law to support its proposition that laches is an issue that is properly

before the jury, and the Court's research has revealed none.   Therefore, the Court will order the

parties to file Cross-Motions for Summary Judgment on the issue of Varian's laches defense (by

separate order of Court).  Accordingly, Varian's Motion In Limine to Include the Issue of Laches as Part of the Damages Trial (doc. no. 557) is DENIED.

**VI.    Defendant's Motion in Limine to Exclude any Content or References Relating to the Finding of Willfulness (doc. no. 559)**

The final issue before the Court is Varian's Motion In Limine to Exclude any Content or References Relating to the Finding of Willfulness (doc. no. 559) and Pitt's response thereto (doc. no. 591).  As discussed in Part III of this Opinion, the Court possesses the inherent authority and discretion to have conducted a trial (without subparts or breaks) at which evidence relating to invalidity, willfulness, and damages would have been simultaneous presented to one jury. However, as discussed in Part II of this Opinion, this Court has decided that conducting three subsections of one trial on three issues was the most fair and advantageous use of the time and resources of the Court, the jury, and the attorneys.  The Court has repeatedly stated that it will not permit parties to "backdoor" other issues into the various subparts of the trial.  Doc. Nos. 426, 452 and 543.

That said, there is no reason for either party to revisit the jury's finding of willfulness at the trial on damages.  And, at the conclusion of the damages subsection of the trial, there will be no reason for the parties to refer again to the damages and willfulness determinations in the trial subsection on invalidity.  The jury's prior finding on willfulness in no way impacts the jury's determination of what the proper compensatory damages should be in this case.  Obviously, the jury is aware of the decision that they made at the willfulness trial, and the evidence put forth during the willfulness trial has been incorporated into the trial as a whole.  By limiting ground that has already been covered, the Court is well within its discretionary power.

Although the Court is GRANTING Varian's Motion In Limine on this point (doc. no. 559), in light of the use of the same jury (and denial of Varian's Motion in Limine to Seat New Jury for Damages Trial), the Motion is technically MOOT.

**VII.    Conclusion**

The trial of this matter shall proceed in accordance with these pretrial rulings.  An appropriate Order (doc. no.  594) incorporating these rulings has been previously filed.  A separate scheduling Order will be filed on cross-motions for summary judgment on the issue of laches.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties