IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a UNIVERSITY OF PITTSBURGH,<br><br>       Plaintiff,<br><br>  v.<br><br>VARIAN MEDICAL SYSTEMS, INC.,<br><br>       Defendant. | 08cv1307<br><br>**ELECTRONICALLY FILED** |

## **Memorandum Opinion on Defense of Laches**

### I.   Introduction

Currently pending before this Court in this patent litigation are the parties' cross-motions for summary judgment (doc. nos. 673, 679) and responses thereto (doc. nos. 707, 714). After careful consideration, the Court finds that the defense of laches is not applicable to the facts of this case, and therefore, plaintiff's motion for summary judgment (doc. no. 673) will be GRANTED; and defendant's motion for summary judgment (doc. no. 679) will be DENIED.

### II.   Standard of Review

Summary Judgment is appropriate when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. Therefore, summary judgment is required against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. The summary judgment inquiry asks whether there

is a need for trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### III.     This Court's Extensive Prior Involvement with this Case

Over the past five years, this Court has had substantial involvement in this litigation. Although it would take dozens of pages to detail the tasks that this Court has undertaken in order to advance this case to its current procedural state (730 docket entries as of March 19, 2012), a brief summary is as follows:

- Pitt sued Varian for, *inter alia*, infringement of the '554 patent on April 13, 2007 (*Varian I*), and this Court dismissed the case with prejudice for lack of standing, because, at that time, Pitt was not the sole owner of the '554 patent. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2008 U.S. Dist. LEXIS 36098 (W.D. Pa. April 30, 2008).
- The United States Court of Appeals for the Federal Circuit determined that the dismissal should have been "without prejudice." *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 569 F.3d 1328 (Fed. Cir. 2009).
- On June 16, 2008, the other patent owner assigned Pitt all of its rights to the '554 patent. Doc. No. 1, Ex. A. This case, *Varian II*, was transferred to this Court from the Northern District of California on September 23, 2008 (doc. no. 83) and, after another ruling from the United States Court of Appeals for the Federal Circuit, the parties stipulated that the '554 patent infringement litigation would proceed as *Varian II*. *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2010 U.S. App. LEXIS 9542 (Fed. Cir. Apr. 27, 2010).
- This Court undertook a detailed review of the Special Master's Report and Recommendation on claim construction, and issued an Opinion Adopting and Modifying the Special Master's Report and Recommendation. Doc. No. 302; *see Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2011 U.S. Dist. LEXIS 52059 (W.D. Pa. May 16, 2011).
- The parties then filed Motions for Summary Judgment (doc. nos. 363, 364). This Court spent a substantial amount of time reviewing thousands of pages of accompanying declarations and exhibits thereto, and then issued an Opinion granting Pitt partial summary judgment, finding Varian had infringed the '554 patent. Doc. No. 432; *see Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 2011 U.S. Dist. LEXIS 149685 (W.D. Pa. Dec. 30, 2011).
- This Court trifurcated the trial in accordance with Fed. R. Civ. P. 42(b). In preparing for trial, this Court has reviewed over 10,000 pages of exhibits in making determinations on authenticity/admissibility. Doc. Nos. 494, 624; Text Order of January 17, 2012. This Court also has ruled on over a dozen Motions In Limine. Doc. Nos. 600, 623.
- This Court presided over a four-day trial on the issue of willfulness, which included 11 witnesses and reference to over 50 exhibits. Doc. Nos. 539, 540.

- This Court then presided over a three-day trial on the issue of damages, which included 7 witnesses and reference to over 20 exhibits. Doc. Nos. 664, 665.
- This Court has reviewed over 2,000 pages of declarations and exhibits thereto while considering the Motions currently before this Court. Doc. Nos. 673, 679.
- The trial on invalidity will take place the week of April 16, 2012.

Thus, this Court has had countless opportunities over the past five years to assess the evidence, evaluate the credibility of witnesses, and note the consistencies (or lack thereof) in the arguments of the parties in litigation which, to date, has generated over 1,000 docket entries in the two related actions.

### IV.  Legal Standard

A laches defense may be available in a patent case, and it will operate to reduce damages if defendant is able to show that plaintiff unreasonably delayed in initiating a suit and that such delay caused material prejudice to the defendant.

"Courts . . . will not assist one who has slept upon his rights [and] shows no excuse for his laches in asserting them." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1029 (Fed. Cir. 1992) (*en banc*) (quoting *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893)). Thus, the goal of laches is "to [exact] of the plaintiff no more than fair dealing with his adversary." *Id*.

In a patent infringement case, a defense of laches is made pursuant to 35 U.S.C. § 282. *Id.* at 1028. In *A.C. Aukerman,* the United States Court of Appeals for the Federal Circuit set forth the necessary elements of a laches defense that the alleged infringer must prove, which are:

[1] [T]he patentee's delay in bringing the suit was unreasonable and inexcusable, *and*

[2] [T]he alleged infringer suffered material prejudice attributable to the delay.

*Id.* (emphasis added). Thus, the alleged infringer has the burden of proof.[1]

### A. Unreasonable Delay

In terms of unreasonable delay, there are no "fixed boundaries," rather unreasonableness depends on the circumstances of the case. The delay is measured from the time that the patentee knew, or should have known, of the alleged infringer's activities, but this period may only begin from the time that the patent is issued.

"[D]elay begins [for laches purposes] when the plaintiff knew, or in the exercise of reasonable diligence should have known, of the defendant's allegedly infringing activity." *Wanlass v. Gen. Electric Co.*, 148 F.3d 1334, 1337-38 (Fed. Cir. 1998) (*quoting Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1559 (Fed. Cir. 1997)). Actual or constructive knowledge is sufficient for this element. Ultimately, a patentee has the duty to be

---

[1] In cases where the patentee was aware of the alleged infringement for more than six (6) years prior to the initiation of the infringement lawsuit, a presumption of laches applies, and the burden shifts to the patentee (instead of the alleged infringer) to disprove laches. Although this Court finds that the presumption of laches does not apply herein (because the lawsuit was brought within the six year period), for the purposes of completeness, a brief discussion of burden shifting is appropriate.
    Where the alleged infringer is able to show that the patentee reasonably knew, or should have known, that the alleged infringing was occurring, but did not sue until six years after such knowledge, a presumption runs in favor of the alleged infringer. If the presumption takes effect, the burden shifts to the patentee to show: (1) that its delay was reasonable; (2) that the alleged infringer has suffered no material prejudice because of the delay; or (3) that the alleged infringer acted inequitably.
    The Federal Circuit, by way of example, not limitation, proffered the following as potential "excuses": other litigation, negotiations with alleged infringer, poverty and illness under limited circumstances, wartime conditions, extent of infringement, and dispute over ownership of the patent. The patentee may also overcome a laches defense if it can show that the alleged infringer "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Id.* This doctrine, known as "unclean hands," will not succeed where the alleged infringer maintained a "good faith belief in the merits of a defense." *Id.* Further, willful infringement alone is not sufficient to defeat a laches defense, thus more egregious behavior on the part of the alleged infringer is necessary for the doctrine of unclean hands to overpower the defense of laches. *TruePosition Inc. v. Andrew Corp.*, 568 F.Supp.2d, 500, 517 (D. Del. 2008) (citations omitted).

"on the lookout" for infringing activities, especially those that are within its particular area of expertise. For example, marketing, sales, and publications by the alleged infringer may impose a duty on the patentee to investigate further any potential infringement. *Id*. at 1338.

### B. Material Prejudice

Material prejudice, the second element, may be proven on either of two grounds: evidentiary or economic. Evidentiary prejudice exists when the alleged infringer is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events." *A.C. Aukerman*, 960 F.2d at 1033. Economic prejudice exists where an alleged infringer or others will suffer the loss of monetary investments or incur damages "which likely would have been prevented by earlier suit." *Id*. The key to a finding of economic prejudice is that there must be a *change* in economic position of the alleged infringer stemming from this delay; consequently, economic prejudice may be found where it can be shown that the alleged infringer could have switched products had it known that it was infringing. *Id*. (citations omitted). Economic prejudice will not exist, however, where the only alleged prejudice flows from the potential finding of infringement in the case at bar. *A.C. Aukerman,* 960 F.2d at 1033.

### C. Discretion of the Court

Laches, having its roots in courts of equity, is left to the sound discretion of the Court. *Id*. As the Federal Circuit stated in *A.C. Aukerman*, "laches is not *established* by undue delay and prejudice[, and thus, these] factors merely lay the foundation for the trial court's exercise of discretion." *A.C. Aukerman*, 960 F.2d at 1036.

**V.      Analysis**

    **A.      Undisputed Facts**

The following undisputed facts demonstrate that laches does not apply in this case:

(1)     Pitt did not secure the legal right to sue Varian for infringement until June of 2008, when CMU assigned to Pitt all of CMU's interests in the patents-in-suit, as this Court so held in *Varian I*.[2]  *Univ. of Pittsburgh v. Varian Med. Sys. Inc.*, 569 F.3d 1328 (Fed. Cir. 2009).

(2)     When Pitt originally sued Varian for patent infringement in April 2007 (*Varian I*), Varian responded by accusing Pitt of violating Fed. R. Civ. P. 11, arguing that Pitt had no reasonable basis to allege infringement.  07-cv-491, Doc. No. 229 at 11.

(3)     Varian has explicitly and repeatedly contended in the pleadings and during trial that Pitt did not believe Varian was infringing Pitt's patent until less than a year before Pitt sued (April 18, 2006).  See, e.g., Doc. No. 437, at 3 and 12.

(4)     There is no competent evidence that Pitt knew, or in the exercise of reasonable diligence should have known, that the accused products were infringing the '554 patent until shortly before Pitt filed suit, especially because Varian kept telling Pitt that Varian was not infringing.

    **B.      Lack of Unreasonable Delay – Much Less Than Six (6) Years**

To expand upon the points listed hereinabove, the procedural history of this litigation reveals that on April 13, 2007, Pitt first sued Varian (*Varian I*, 07-cv-491), and Varian responded by seeking Rule 11 sanctions against Pitt on the basis that Pitt commenced the action without "a

---

[2] Varian is correct that this Court held that Pitt's decision to join CMU so late in *Varian I* was a tactical error.  *See* Doc. No. 714 at n.2 (citing 07-cv-491, Doc. No. 294 at 4-5).  Pitt paid a hefty price for that error -- it cannot recover for damages incurred between April 13, 2001 and June 16, 2002.  As outlined below, however, this delay did not prejudice Varian.

reasonable basis to allege infringement." Varian then moved for summary judgment on the ground that CMU co-owned the patents-in-suit and its absence from the case left Pitt without standing to sue. This Court granted Varian's standing motion and dismissed *Varian I* for that reason. Then, on June 16, 2008, CMU assigned Pitt all of its right, title and interest in the '554 patent, thereby curing the defect that existed in *Varian I*. Varian's pleadings in the first litigation (that *Varian I* was premature) cannot be reconciled against its current position that Pitt has unreasonably delayed in filing suit. Doc. No. 679; 07-cv-491, Doc. No. 229 at 11.

      Moreover, there is simply no competent evidence to raise an inference that Pitt unreasonably delayed in filing suit against Varian. While the parties agree that Pitt "learned of the product accused of infringement in this case" (doc. no. 566 at 2), the relevant inquiry is the date on which Pitt first knew or should have known that those products were, in fact, infringing the '554 patent. In its pleadings, and at trial, Varian has presented evidence to demonstrate that Pitt did not actually know, or have reason to know of Varian's infringement until approximately a year before filing suit (April 18, 2006). In Varian's pretrial statement on the willfulness subpart of the trial, Varian argued that it reasonably believed that it was not infringing the '554 patent, because Pitt believed that Varian was not infringing the patent. Doc. No. 476 at 3. Varian cited to an April 18, 2006 internal email from Pitt's Office of Technology Management (Dr. Alex Ducruet) to illustrate that Pitt, after investigating the issue of infringement, had actually concluded that Varian was not infringing the '554 patent. In Varian's pretrial statement, it described that email as follows: "Internal Pitt documents show that Pitt's representative did not believe RPM infringed. . . . In that email, Dr. Ducruet told Marc Malandro, the Director of Pitt's Office of Technology Management, that he had concluded that 'the products they [Varian]

7

offer for sale probably do not infringe.'"  That email was sent on April 18, 2006, less than a year before Pitt sued.  Doc. No. 437 at 3 and 12.

Additionally, there is also no evidence that Pitt should have known that Varian was infringing the '554 patent until at least 2006.  On the contrary, the evidence establishes that Pitt had *no* reason to know of the infringement until 2006.  However, Varian now argues that Pitt should have known Varian was infringing the patent because Dr. Greenberger (one of the inventors of the '554 patent) obtained a two-page brochure regarding the RPM product in 1999.  The brochure, dated 1998, a year before the RPM product was launched in 1999, provides a general description of the RPM product, but the Court finds that it does not provide the type of information that Pitt would have needed to make an informed assessment of infringement.  *See* Ex. DD-258.  At most, this evidence demonstrates that Pitt knew in 1999 that Varian was preparing to release a respiratory gating product.  It does not come close to equaling competent evidence to demonstrate that Pitt knew, or should have known, that it had a claim of infringement.

### C. Lack of Material Prejudice

Varian now argues that it has been prejudiced by the loss and/or destruction of the inventors' materials related to the attempt to reduce the '554 patent to practice.  Doc. No. 714 at 14-17.  In order to demonstrate evidentiary prejudice, Varian must present competent evidence illustrating that the delay prevented it from proving its non-enablement defense.  *Hearing Components, Inc. v. Shure, Inc.,* 600 F.3d 1357, 1376 (Fed. Cir. 2010).  This Court finds as a matter of law that there has been no evidentiary prejudice to Varian.  There is no requirement in the patent laws that an inventor reduce a patent to practice.  *See* 35 U.S.C. § 112.  The only requirement is that the patent enable a person skilled in the art to reduce the patent to practice.

Evidence that the first (and possibly subsequent) attempts by the inventors to create a commercially viable device does not show that a person skilled in the art would not be able to reduce the '554 patent to practice.[3]  There is simply no competent evidence to suggest that the inventors went beyond routine experimentation. *See Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1376 (Fed. Cir. 1999).

Additionally, as for Varian's contention that it suffered economic prejudice during the period of Pitt's alleged delay, there is no competent evidence to demonstrate that the *investment* in ongoing development, marketing, sale and support of multiple versions of the RPM System was in any way related to the alleged delay.  On the contrary, Varian's contention of economic prejudice is severely undercut by the reality that even today, nearly five (5) years after Pitt first sued Varian for infringement and two (2) months after this Court found infringement as a matter of law, Varian continues to sell the infringing products, with profits in the millions.  Even more, the fact remains that Varian actually delayed over three (3) years after it was first sued to even attempt a design-around, and it was not successful in that regard.  Doc. No. 432 at 32-37.[4]  Furthermore, Varian has continued to sell RPMs in combination with linear accelerators despite the claim construction issued by this Court.  According to Varian, its choice to no longer bundle the products, although made the same year as *Varian I* was filed, had nothing to do with the

---

[3] The Court also notes that this argument contradicts Varian's contention throughout this case that the prior art alone enables a person skilled in the art to reduce the '554 patent to practice. *See generally* Doc. Nos. 570, 571.

[4] Any delay in filing suit constitutes excusable delay.  According to *A.C. Aukerman*, and as addressed in footnote one (1) hereinabove, there are certain recognized justifications for delaying litigation, and notably, among the justifications is the patent holder's attempt to negotiate a license with the accused infringer.  The evidence and testimony at trial establishes that the parties engaged in licensing negotiations in 2002 and again in 2005-2006, totaling approximately a year and a half of negotiations.  After hearing the testimony of Pitt's witnesses regarding these negotiations, which the Court (and presumably the jury) found credible, the Court finds that any delay was both reasonable and excusable.

lawsuit being filed. Thus, all decisions regarding the sale of combination units were not impacted by Pitt filing suit.

        **D.**       **Equitable Considerations**

After careful consideration of the totality of the circumstances, the Court finds that it would be inequitable to apply laches for three reasons: (1) Varian's pre-litigation conduct; (2) public policy considerations; and (3) the findings of the jury.

Varian's conduct prior to the litigation evidences that Varian continually assured Pitt that it was not infringing Pitt's patent, and during negotiations Varian offered nothing more than "nuisance" value. It would be inequitable for this Court to reward Varian for continuing to argue that a license for the '554 patent was only worth nuisance value, when, in fact, this Court and a jury have found that the patent was worth a great deal more than nuisance value. To do so would encourage infringers to negotiate in bad faith with a patentee, arguing that a patent is only worth nuisance value, in order to enable a laches defense if a lawsuit is eventually filed. An application of laches in this circumstance would run afoul of public policy consideration because to do so would discourage patentees from negotiating with potential licensors because the patentee would be worried about laches being applied if the negotiations were to break down. Instead, it would encourage patentees to instead immediately file suit against a potential licensor. This would increase the costs on both the patentee and the potential licensor, as well as taxing the judiciary's limited resources. Finally, the jury has already determined that Varian's conduct was willful, that Varian's invalidity arguments were unreasonable, and that Varian has set forth no reasonable basis upon which it could reasonably concluded that it was not infringing a valid patent. Doc. No. 542.

**VI.     Conclusion**

The Court finds that the elements of laches have not been met, and moreover, the conduct of Varian (as established in the willfulness and damages phases of the jury trial) leads this Court to the conclusion that laches does not apply for equitable reasons.  In conclusion, having had the opportunity to preside over this trial, and having observed the demeanor of the witnesses, and the evidence presented, the Court finds that it would be inequitable and unfair to punish Pitt for Varian's conduct prior to and during this litigation.  Further, the application of this equitable defense to the facts of this case would only serve to undercut the findings of the jury (who specifically found that Varian willfully infringed).

For these reasons, after considering the totality of the circumstances, the Court finds that laches does not apply to the facts of this case because there is no evidence of either unreasonable delay or material prejudice.  Therefore, the Court will grant plaintiff's motion for summary judgment on laches (doc. no. 673), and will deny defendant's motion for summary judgment on laches (doc. no. 679).

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc:     All Registered ECF Counsel