IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH OF THE
COMMONWEALTH SYSTEM OF HIGHER
EDUCATION d/b/a UNIVERSITY OF
PITTSBURGH,

08cv1307

**ELECTRONICALLY FILED**

        Plaintiff,

   v.

VARIAN MEDICAL SYSTEMS, INC.,

        Defendant.

**<u>MEMORANDUM OPINION RE: ENHANCED DAMAGES
PURSUANT TO 35 U.S.C. § 284, ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285,
PREJUDGMENT INTEREST PURSUANT TO 35 U.S.C. § 284, AND AN ONGOING
ROYALTY</u>**

**I.  Introduction**

     Presently before this Court are Plaintiff, University of Pittsburgh's ("Pitt's"), Motion for

Enhanced Damages pursuant to 35 U.S.C. § 284, which includes a request for attorneys fees,

Pitt's Motion for Prejudgment Interest, and the parties' Motions on an Ongoing Royalty.  Doc.

Nos. 686, 722, 747, and 749.  After careful consideration of the Motions, Defendant Varian

Medical System's ("Varian's") and Pitt's Responses in Opposition (Doc. Nos. 696, 753, 764,

765), Pitt's Reply Thereto (Doc. No. 702), and Varian's Supplemental Brief (Doc. No. 857), the

jury's verdict in the damages portion of the trial will be multiplied by a factor of 2  (*i.e.,* 200%),

Pitt will be awarded reasonable attorneys fees, and Pitt will be awarded prejudgment interest in

the amount of 6%.  The Court also will impose an ongoing royalty of 10.5% for sales of RPM

Systems and 1.5% for sales of Clinac and Trilogy linear accelerators sold in combination with

RPM Systems will be imposed.  The reasons for these decisions are set forth as follows.

## II. Factual Background and Procedural History

This is an action in patent infringement.  The parties are familiar with the relevant facts.
The Court set forth a detailed procedural and factual history of this case in its Memorandum
Opinion on Pretrial Motions in Limine.  Doc. No. 600, 1-4.  Therefore, the recitation which
follows only contains information pertinent to the present Memorandum Opinion.

On December 30, 2011, the Court granted Pitt's Motion for Partial Summary Judgment,
finding that Varian infringed Pitt's U.S. Patent No. 5,727,554 ("'554 patent"), as a matter of law.
Doc. No. 432.  The Court also denied Varian's Motion for Summary Judgment regarding
invalidity, damages, and willfulness.  Id.  The Court also found the redesigned RPM System
infringes as a matter of law (literally and under the doctrine of equivalents), and struck Varian's
belated defense of non-infringement due to "incapacity."  Id.  On January 26, 2011, at the
conclusion of the first of three parts of the trial, the jury found that Varian willfully infringed
Pitt's '554 patent.  Doc. No. 542.

On February 23, 2012, at the conclusion of the damages portion of the case, the jury
found that Pitt was entitled to receive a reasonable royalty rate of 10.5% for Varian's sales of
RPM Systems from June 16, 2002 to March 31, 2011, which equated to damages in the amount
of $12,095,819.00.[1]  Doc. No. 666.  Additionally, the jury found that Pitt was entitled to receive
a reasonable royalty rate of 1.5% for Varian's Clinac and Trilogy linear accelerators sold in
combination with RPM Systems from June 16, 2002 to March 31, 2011, totaling $24,788,475.00.
Id.  In total, the jury found that Varian should pay Pitt over $36.8 million for infringing Pitt's
'554 patent, through March 31, 2011.  Id.  Following this jury verdict, Pitt filed the instant

---

[1] The reasonable royalty is for infringing sales subsequent to the entry of Final Judgment.  The
parties are currently working on a stipulation for Varian's sales from April 1, 2011 to the present.

Motions for enhanced damages, attorneys fees, and prejudgment interest.  Doc. Nos. 686 and 722.  The parties both filed respective Motions on ongoing royalties.  Doc. Nos. 747 and 749.

In the third portion of the trial in this case, the jury found that Varian had not proved, by clear and convincing evidence, that: (1) claims 20, 21, 22, 25, 26, 28, 30, 31, and 38 of the '554 patent are invalid because they are anticipated; (2) claims 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 36, 37, and 38 are invalid because they are obvious; and/or (3) claims 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 36, 37, and 38 are invalid because they are not enabled.  Doc. No. 853.  Based upon the parties' Cross-Motions for Summary Judgment (Doc. Nos. 776 and 779), the Court found that claims 20-26, 28-32, and 36-38 are not indefinite (Doc. Nos 858 and 859).

The Court will now address the parties' pending Motions which address enhanced damages pursuant to 35 U.S.C. § 284, an award of attorneys fees, an award of prejudgment interest, and an ongoing royalty, respectively.  Dos. Nos. 686, 722, 747, 749.

### III.  Enhanced Damages Pursuant to 35 U.S.C. § 284

Pursuant to 35 U.S.C. § 284, " . . . the court may increase the damages up to three times the amount found or assessed."  The underlying rationale embodied in enhanced compensatory damages is deterrence and punishment of the infringer, as well as "protection of the integrity of the patent system."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., et al.*, 762 F. Supp. 2d. 710 (D. Del. 2011) (quoting *Lightwave Techs., Inc. v. Corning Glass Works*, 1991 U.S. Dist. LEXIS 543 (S.D.N.Y. Jan. 16, 1991)).

An inquiry of enhanced damages pursuant to 35 U.S.C. § 284 has two steps.  First, a determination must be made as to whether the infringer, in this case Varian, acted with culpability.  A finding of willful infringement satisfies the culpability requirement.  *Odetics, Inc. v. Storage Tech. Corp*, 185 F.3d 1259, 1274 (Fed. Cir. 1999).  As noted, on January 26, 2011, the

jury found that Varian willfully infringed Pitt's '554 patent.  Doc. No. 542.  This finding is not an automatic basis for enhancing the damages award, but satisfies the first step of the analysis.

Once the first step is satisfied, the Court must determine if, and to what extent, damages should be enhanced.  Enhanced damages are discretionary and are based on the totality of the circumstances of the case, including both aggravating and mitigating facts.  *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1308 (Fed.Cir. 2005); *Odetics,* 185 F.3d at 1274.  "The paramount determination  . . .  is the egregiousness of the defendant's conduct based on all the facts and circumstances."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

The United States Court of Appeals for the Federal Circuit has provided district courts with factors, known as the *Read* factors, to consider when determining whether, and to what extent, damages should be enhanced.  The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent, and formed a good-faith belief that the patent was invalid or was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  *i4i LP v. Microsoft Corp.*, 589 F.3d 1246, 1273-74 (Fed. Cir. 2009).

Therefore, the Court turns to the application of the *Read* factors to this case.

*1.  Deliberate Copying and Investigation of Scope of Patent*

The Court, in its Opinion on the parties' Cross-Motions for Summary Judgment, and the jury verdict in the willfulness portion of the trial, have, in effect, already determined the first two *Read* factors: (1) whether the infringer (Varian) deliberately copied Pitt's '554 patent and (2) whether Varian investigated the scope of the patent to avoid infringement.  Doc. Nos. 432 and 542.  Varian was aware of Pitt's '554 patent since at least February 2000.  Doc. 505, ¶ 21.  By granting summary judgment, the Court found that Varian's non-infringement defenses were objectively unreasonable.[2]  Doc. No. 432, 40 ("The Court, as a matter of law, rules on the existing record that Varian's reliance on its alleged non-infringement, and its reliance on the other non-liability issues and defenses raised by Varian were not reasonable, and was objectively reckless.").  Furthermore, the jury found that Varian's invalidity defenses were unreasonable.  Doc. No. 542.  In doing so, they found that "Varian knew, or it was so obvious that Varian should have known, that it was highly likely it was infringing a valid patent."  Id.

The Court also notes the '554 patent prosecution history.  On March 17, 1998, Pitt's application for the '554 patent was granted.  The '554 patent originally had 22 claims.  Following failed licensing negotiations between Pitt and Varian, and prior to the Court's ruling on summary judgment and the willfulness trial, Varian presented many similar invalidity

---

[2] Varian's reliance on *Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) to support its position that the absence of copying "weighs heavily against any enhancement" is misplaced.  In *Cybor Corp.*, the Federal Circuit noted that the district court observed that "evidence supported Cybor's contention that it in good faith did not consider its system to be infringing."  *Id.* at 1461.   In contrast, this Court has found that Varian did not have any reasonable non-infringement arguments and the jury found that Varian willfully infringed Pitt's '554 patent.  Therefore, *Cybor Corp.* does not support Varian's position against enhanced damages.

positions to the United States Patent and Trademark Office.  Doc. No. 571, 100.  In 2010, the

Patent and Trademark Office, in a reexamination proceeding, not only found that the '554 patent

was valid, but also added additional claim terms (Claims 23-38).[3]  Exhibit JT-39.

The Court's finding of infringement in its Opinion on Cross-Motions for Summary

Judgment, the jury's finding of willful infringement, and the '554 patent prosecution history all

demonstrate that although Varian investigated Pitt's '554 patent, it did not have a reasonable

good-faith belief that Pitt's patent was invalid or, if valid, that Varian's devices did not infringe.

Indeed, any alleged "good faith" belief of non-infringement by Varian was negated by its

continued insistence on its positions, despite findings of the Patent and Trademark Office and

subsequent legal rulings and jury verdicts.  As noted by a fellow district court judge, "one who

undertakes a course of infringing conduct may neither sneer in the face of the [IP] owner nor

hide its head in the sand like an ostrich."  *Metso Minerals, Inc. v. Powerscreen Int'l Dist. Ltd.*,

2011 WL 6225376 (E.D.N.Y. Dec. 8, 2011) (quoting *Video Views, Inc. v. Studio 21, Ltd.*, 925

F.2d 1010, 1021 (Fed. Cir. 1991));  *see also Nat'l Bus. Forms & Printing, Inc. v. Ford Motor

Co.*, 2009 WL 3570387, at * 6 (S.D. Tx. May 8, 2009) ("an infringer cannot be naïve and be like

ostriches and put their heads in the sand and ignore obvious facts" and then later claim

entitlement to status as an "innocent infringer.").  Therefore, because Varian did not have a good

faith belief that Pitt's '554 patent was invalid, or that it was not infringing the '554 patent, *Read*

factors one and two weigh in favor of enhanced damages.

---

[3] The Court ruled that Claims 20-22, 25-26, 36, and 38 infringed as a matter of law.  Doc. No.
432.  Pitt is only entitled to recover on these Claims.

## 2. *Conduct During Litigation*

This case has a long procedural history in which both sides have zealously represented their clients.  The Court understands the need to protect the record for appeal purposes. However, instead of complying with this Court's Orders while protecting the record, Varian has consistently attempted (although not in bad faith) to have the trial proceed in the manner in which it chose, rather than based upon this Court's rulings.  *See, e.g.*, Emergency Motion for Reconsideration of Pretrial Order (Doc. No. 427); Motion for Reconsideration Proposed Verdict Form (Doc. No. 484); Motion for Reconsideration of Order Excluding Deposition Testimony of Dr. Jeffrey Shogan Based on Changed Circumstances (Doc. No. 527); Petition for a Writ of Mandamus and Emergency Motion for Stay of Trial (Doc. No. 508); and Motion for Declaration of Mistrial (Doc. No. 808).

By way of example, this Court set a trial to begin on January 23, 2012, on the narrow issue of willfulness based upon the parties' contentions in their Motions for Summary Judgment that this singular issue was relatively straightforward and necessitated a ruling for their respective sides.  Doc. No. 426.  However, despite originally arguing that willfulness was a simple issue to which Varian was clearly entitled to a favorable ruling, Varian objected to the first portion of the three-part trial being on this narrow issue.  Doc. No. 427; *In re Varian Med. Sys. Inc.*, 2012 U.S. App. LEXIS 1196, at *2 (Fed. Cir. Jan. 20, 2012).  At the January 13, 2012 preliminary pre-trial conference, the Court gave Varian the option to try invalidity with the issue of willfulness in the first portion of the trial.  *Id.* at *5; Doc. No. 684, 34 ("Again, we are trying willfulness because [Varian] said it was a winner for [it] . . . on summary judgment and only took five pages [to argue that point.]")  However, Varian contended that it would not have sufficient time to prepare for the invalidity trial, even though much of the evidence and argument

7

would have been the same as the willfulness portion of the trial.  *In re Varian*, 2012 U.S. App. LEXIS 1196, at *5 ("There would be no way to do it.").  Thus, the Court denied Pitt's request to try invalidity with willfulness.

The Court has permitted both sides to zealously advocate their respective positions to the Court in the form of motions, oral argument, and presentation to the jury.  Again, this Court is mindful of the need to protect the record and has allowed both parties to do so.  However, although it has not acted in bad faith, Varian has continually re-argued the Court's rulings, and attempted to delay the litigation with an extensive motion practice.  Therefore, this *Read* factor weighs in favor of enhancing damages.

3.   *Varian's Financial Condition*

The jury in the damages portion of the trial awarded Pitt over $36 million in damages: (a) based upon sales of RPM Systems and (b) based upon sales of Clinac and Trilogy linear accelerators sold in combination with RPM Systems, from June 16, 2002 to March 31, 2011. Doc. No. 666.  The award consisted of a 10.5% reasonable royalty rate for sales of RPM Systems and a 1.5% reasonable royalty rate for sales of Clinac and Trilogy linear accelerators sold in combination with RPM Systems.  Id.  Evidence submitted to the jury demonstrated that Varian is a multi-billion dollar corporation.  Indeed, Varian made a gross profit of approximately $91,582,630 on sales of RPM Systems during the applicable time period and a gross profit of approximately $849,450,742 for sales of the Clinac and linear accelerators sold in combination with RPM Systems.

Pitt sought a royalty rate of 12% for sales of the RPM Systems for damages of $13,720,170 (Doc. No. 636-1), and a royalty rate of up to 3% was sought for sales of Clinac and Trilogy linear accelerators sold in combination with RPM Systems for damages of $49,576,950.

Id.  The difference between the jury verdict of over $36 million and the potential total damages

that Pitt sought, of over $63 million, is $26,412,826.00.  Doc. Nos. 636-1 and 666.  Additionally,

if the jury had awarded Pitt's total requested damages of just over $63 million (12% royalty

requested for sales of RPM and 3% royalty requested for sales of linear accelerators sold in

combination with RPM System respectively), Varian would have still made a gross profit of

approximately 67.5% on sales of RPM and a weighted gross profit of 48.1% on linear

accelerators sold in combination with RPM.

Enhanced damages are designed to be punitive.  *SRI Int'l, Inc. v. Advanced Tech. Labs.,*

*Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997).  There is no evidence before this Court that

enhancing the jury's verdict would "severely prejudice" Varian's business.  *See Power*

*Integrations,* 762 F.Supp.2d at 722.  While the jury's damages award may be said to adequately

compensate Pitt for Varian's infringement, it does not serve a punitive function because of

Varian's high profit margins and revenue.  Accordingly, Varian's financial condition weighs in

favor of enhancing damages.

*4.  Closeness of the Case*

Closeness of the case relates to both infringement and willfulness.  *Laitram Corp. v. NEC*

*Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) ("The district court properly considered whether

[Defendant] has presented a good faith defense against willfulness and a substantial challenge to

infringement.").  The procedural history of this case demonstrates that Varian did not present a

substantial question of noninfringement or willful infringement so as to make this a "close case"

in either respect.  This Court granted summary judgment for Pitt and found as a matter of law

that Varian infringed Pitt's '554 patent.  Doc. No. 432.  The Court found that Varian's defenses

were "reckless" as defined in *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir. 2007).

Therefore, Varian does not have any "substantial challenge" to infringement.  See Doc. No. 432 at 40 ("Varian's reliance on its alleged non-infringement, and its reliance on the other non-liability issues and defenses raised by Varian were not reasonable, and was objectively reckless.").

Summary judgment was granted for Pitt because it was clear from the record that there were no genuine issues of material fact in dispute and because Varian failed to establish that a finder of fact could have reasonably found that it did not infringe the '554 patent.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the Court had determined that a reasonable jury could have determined that Varian did not infringe the '554 patent, then Pitt's Motion for Summary Judgment would have been denied.  However, because the Court found, and continues to believe, that the record could not lead to a reasonable jury's finding of non-infringement of the '554 patent, this is not a "close case."

Furthermore, in the willfulness portion of the trial, the jury found, using the "clear and convincing evidence" burden of proof standard, that Varian willfully infringed the '554 patent because its invalidity theories were "unreasonable."  Doc. No. 542.  The jury found that Varian willfully infringed Pitt's '554 patent because "the infringer acted despite an *objectively high likelihood* that its actions constituted infringement of a valid patent."  *Seagate*, 497 F.3d at 1371 (emphasis added).  This demonstrates that Varian's infringement was never a "close case."

In its response to Pitt's Motion for enhanced damages, Varian argues that the litigation between the two parties has been a "close case" and, therefore, damages should not be increased.  Doc. Nos. 696, 5-15; 857.  The Court notes Varian's reliance on *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410 (Fed. Cir. 1993), to argue that damages should not be enhanced

because it had "a meritorious good faith defense and a substantial challenge to infringement." *Id.* at 413.   However, the Court finds that based upon its rulings and the subsequent jury verdicts, that Varian never had "a substantial challenge to infringement."   Therefore, Varian's infringement and its willful actions cannot be said to have been a "close case," and this factor weighs in favor of enhanced damages.

     5.   *Duration of Misconduct and Remedial Measures*

     The jury found that Varian's willful infringement had begun by at least 2002 and continues to present.   Doc. No. 542.   The jury verdict came almost ten years after this conduct began.   Id.   Varian continues to sell its products that have been found to infringe the '554 patent. Overall, Varian's infringing activities have continued for at least 10 years, which the Court finds to be a significant period of time.   *Metso*, 2011 WL 6225376, at * 6 ("[T]he Defendants continued to sell the infringing screeners during the entire four and one-half year pretrial period, throughout the trial itself, and even post verdict.   Overall, the infringing activities took place over 11 years, which the Court finds to be a significant period of time.").   Therefore, the lengthy duration of Varian's misconduct weighs in favor of enhanced damages.

     The Court also finds that Varian's lack of remedial actions weigh in favor of enhanced damages.   Varian only attempted to design around the patent in June 2010.   Doc. No. 432, 32 (citing Doc. No. 401, 66).   Furthermore, the project was abandoned as inferior without implementation.   Id. at 32-33.   Varian's 2011 proposed alternative design was similarly unsuccessful.   Id. at 33 (citing Doc. No. 401, 67).   For the past ten years, Varian has continued to produce and sell products which they should have reasonably believed infringed Pitt's '554 patent.   Varian did not successfully re-design around the products or voluntarily stop making them once litigation began.   *Power Integrations,* 762 F.Supp.2d at 723 (citing *Intra Corp. v.*

11

*Hamar Laser Instruments, Inc.*, 662 F.Supp. 1420, 1439 (E.D. Mich. 1987) ("For remedial

measures  - - which, by definition, can only be taken after a party knows of the need to remedy

its actions - - conduct during and after litigation can also be taken into account.").

Even after this Court found that RPMs and linear accelerators sold in combination with

RPMs infringe the '554 patent, Varian did not stop selling the infringing products.  While Varian

may not have taken more remedial measures because it may intend to pursue its arguments on

appeal, the Court is "not directed to evaluate defendant[']s appellate position.  Instead, [the Court

is] told to determine whether remedial actions have been taken."  *Muniauction, Inc. v. Thomson*

*Corp and i-Deal, LLC*, 502 F.Supp.2d 477 (W.D. Pa. 2007) (Lancaster, J.), *rev'd on other*

*grounds*, 532 F.3d. 1318 (Fed. Cir. 2008).

Therefore, both the duration of the misconduct and Varian's remedial measures weigh in

favor of enhanced damages.

> *6.  Motivation for Harm*

The parties in this case were not direct business competitors, because Pitt, as an

educational and research institution, has not made or marketed products resulting from its efforts.

Therefore, it appears that Varian's infringement was motivated by the possibility of increased

profits from sales of the RPM Systems and Clinac and Trilogy accelerators sold in combination

with RPM Systems rather than direct harm to Pitt.  As such, the Court finds that this factor

weighs against enhanced damages.

> *7.  Efforts to Conceal Misconduct*

In applying the final *Read* factor to this case, the Court must determine whether Varian

attempted to conceal its infringement "either through advertising and selling the products

covertly or through concealing evidence of infringing conduct."  *Power Integrations*,

12

762 F.Supp. 2d at 725.  Here, the Court finds that there is evidence that Varian attempted to

conceal its infringement, or at least the full extent of its infringement, during extended licensing

negotiations with Pitt.  Varian's contention to Pitt that it was not infringing Pitt's patent could

have allowed it to obtain a license agreement from Pitt for "nuisance value."  See Ex. P5.  This

contention is belied by the Court's finding on invalidity and the jury's findings on willful

infringement and invalidity and, therefore, demonstrates that Varian was attempting to conceal

its misconduct during its license negotiations with Pitt.  As such, this factor weighs in favor of

enhancing damages.

   *8.  Conclusion on Enhanced Damages*

   The Court finds that all but one of the *Read* factors weigh in favor of increased damages

and that, accordingly, an enhanced damages award is appropriate.  Therefore, the Court must

determine the appropriate factor by which to multiply the jury's $36.8 million verdict.  In doing

so, the Court may consider the size of the damages award.  *Riles v. Shell Exploration and Prod.*

*Co.*, 298 F.3d 1302, 1314 (Fed. Cir. 2002).  Here, the jury's award was 58.3% of the high end of

the damages range requested by Pitt.  The jury was informed that its award was to be

compensatory only.  Doc. No. 660, 10-11.  The Court finds that, pursuant to 35 U.S.C. § 284, it

is most appropriate to enhance the jury's award by a factor of 2 (200%).  The Court finds that

trebling damages certainly would be appropriate in this case in light of the *Read* factors.

However, because of the jury's substantial verdict, the Court exercises its discretion and doubles

the award, rather than treble it, as requested by Pitt.[4]  Doubling the total damages award is an

---

[4] The Court notes that 35 U.S.C. § 284 provides that the Court may increase the damages up to
three times the amount found assessed, without reference to the infringer's profits.  Damages
have been defined as "compensation for the pecuniary loss he (the patentee) has suffered from
the infringement, without regard to the question whether the defendant has gained or lost by his

adequate damages award to compensate Pitt, and to punish Varian, for its infringement of Pitt's '554 patent.

### IV.  Attorneys Fees Pursuant to 35 U.S.C. § 285

Section 285 of Title 35 of the United States Code provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

> When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry.  First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional . . . If the district court finds that the case is exceptional, it must then determine whether an award of attorneys fees is justified.

*MarcTec, LLC v. Johnson & Johnson and Cordis Corp.,* 664 F.3d 907, 915-16 (Fed. Cir. 2012) (citations omitted); s*ee also Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1323-24 (Fed. Cir. 2011); *Carrol Touch, Inc, v. Electro Mech. Sys. Inc.,* 15 F.3d 1573, 1584 (Fed. Cir. 1993) *(*citing *Reactive Metals & Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed. Cir.1985)); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050 (Fed. Cir. 1992).

"An award of attorneys fees is permissible 'when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P 11, or like infractions.'" *iLOR, LLC v. Google Inc.,* 631 F.3d 1372, 1376-77 (Fed. Cir. 2011) (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l. Inc.,* 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

---

unlawful acts." *Aero Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505 (1964). Therefore, the Court finds that doubling the jury's damages verdict both adequately compensates Pitt for its pecuniary loss, while punishing Varian for its willful infringement (but not substantially punishing Varian in light of the high profit margins involved).

*A. This is an Exceptional Case under 35 U.S.C. § 285*

Pitt has met its burden of proving, by clear and convincing evidence, that this is an exceptional case under 35 U.S.C. § 285 with the jury's verdict at the willfulness trial.  Willful infringement is one of the permissible reasons for awarding attorneys fees.  *Brooks Furniture*, 393 F.3d at 1381.  "District courts have tended to award attorneys fees when willful infringement has been proven, and [the United States Court of Appeals for the Federal Circuit] has uniformly upheld such awards."  *S.C. Johnson & Son, Inc. v. Carters-Wallace Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986).

In this case, the jury determined that Varian's infringement of the '554 patent was willful in all respects at issue during the trial.  Doc. No. 542.  This included the time period prior to the lawsuit being filed, during the re-examination of the '554 patent, and after the new claims were issued.  Id.  In order to make this finding, the jury had to find that Varian willfully infringed the '554 patent by clear and convincing evidence, the same standard that is used for a finding of exceptional circumstances under 35 U.S.C. § 285.  Id.  Therefore, because of the jury's verdict in the willfulness portion of this trial, the Court finds that the present litigation has been an exceptional case pursuant to 35 U.S.C. § 285.

*B. Awarding Pitt's Attorneys Fees is Appropriate*

After a finding of exceptional circumstances, this Court has discretion whether to award attorneys fees.  *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 629 (Fed. Cir. 1985).  The Court finds that an award of attorneys fees in this case is necessary to meet the objectives of 35 U.S.C. § 285.  Section 285 was designed to discourage individuals from wasting the resources of both the litigants and the Court, by engaging in practices such as willful infringement and unnecessary litigation tactics.  Pitt has expended a great deal of resources in

15

this case to protect its rights under the '554 patent.  In fact, Pitt avers that at the time it moved for attorneys fees, that it had spent one-third of the jury's compensatory damages award on attorneys fees (Doc. Nos. 66, 687 at 17), despite the fact that this was not a "close case," and there was no trial on whether the RPM system infringed the '554 patent.  Thus, this Court will grant Pitt's Motion for Attorneys Fees.

### V.  Prejudgment Interest Pursuant to 35 U.S.C. § 284

   *A.  Legal Standard*

Prejudgment interest is not a punitive measure.  *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996).  Instead, it is meant to make Pitt whole for the damages that it incurred because of Varian's infringement of the '554 patent.  *See, id.*  "[Pitt] ha[s] made a large, involuntary, unsecured loan to a debtor of uncertain credit-worthiness that is doing its utmost to avoid paying.";  *In the Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 831 F.Supp. 1354, 1394 (N.D. Ill. 1993) (Easterbrook, J sitting by designation). Without prejudgment interest awards, it would be advantageous for a company to infringe a patent in order to get a very substantial, interest free loan for the duration of the litigation arising from the infringement, which, as evidenced by this case, can be an extended period of time.

"[P]rejudgment interest should ordinarily be awarded [to prevailing plaintiffs in patent litigation.]"  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010).  The United States Court of Appeals for the Federal Circuit has held that because the amount of prejudgment interest is not unique to patent law, the law of the appropriate regional circuit is applicable.  *Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1381 (Fed. Cir. 2003) (citing *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347-48 (Fed. Cir. 1999)).  The United States Court of Appeals for the Third Circuit has

16

recognized that interest should generally be awarded in patent litigation. *See Poleto v. Consol. Rail Corp.*,  826 F.2d 1270, 1278 (3d Cir. 1987), *abrogated on other grounds, Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990).

While the *Devex* case allows for the possibility that the district court may decide not to award  prejudgment interest in patent litigation, the United States Court of Appeals for the Third Circuit has considered four factors when determining if prejudgment interest should be awarded:

(1) whether the claimant has been less than diligent in prosecuting the action;

(2) whether the defendant has been unjustly enriched;

(3) whether an award would be compensatory; and

(4) whether countervailing equitable considerations militate against a surcharge.

*Feather v. United Mine Workers of America*, 711 F.2d 530, 540 (3rd Cir. 1983).

If prejudgment interest is awarded, the Court has the discretion to award simple or compound interest. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995).  If the Court awards compound interest, the Court has the discretion on how often the interest should be compounded. *Studiengesellschaft Kohle v. Dart Indus., Inc.,*, 862 F.2d 1564, 1580 (Fed. Cir. 1988).

As to the rate of interest to be awarded, "[i]n federal question cases, the rate of prejudgment interest is committed to the discretion of the district court." *Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 63 (3d Cir. 1986).  However, because prejudgment interest is meant to be compensatory, and not punitive, when damages are increased because of willful infringement, "prejudgment interest cannot be assessed on the increased or punitive portion of the damages award." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983).

"[A] district court does have authority, in cases of 'bad faith or other exceptional circumstances,' to award pre-judgment interest" on the award of attorney fees under 35 U.S.C. § 285." *Mathis v. Spears*, 857 F.2d 749, 761 (Fed. Cir. 1988). The award of prejudgment interest on attorneys fees is not mandatory and is an equitable decision to be made by the Court. *Id*.

    *B. Analysis*

    This Court has already ruled that laches does not apply in this case, and thus found that Pitt has been diligent in prosecuting the action. Doc. No. 731. Varian has been unjustly enriched by having access to the $36.8 million the jury found it owes Pitt during the period of infringement. The award of prejudgment interest would be compensatory because it is compensating Pitt for not having access to its money during the period of infringement. There are no countervailing equitable considerations that mitigate against the imposition of prejudgment interest. Thus, the Court finds that prejudgment interest should be awarded.

    The Court finds that the statutory rate of interest in Pennsylvania, 6%, is appropriate in this case. The rate adequately compensates Pitt for not having access to its money during the period of infringement while not being punitive in nature. This Court finds that it is in the interest of justice to have a consistent rate at which prejudgment interest is awarded, and that the local statutory rate is an appropriate benchmark.

    In order to fully compensate Pitt, prejudgment interest will be awarded from the date that the reasonable royalty should have been paid by Varian. The Court finds that a quarterly remittance period is reasonable. Varian's licenses with other companies show that quarterly reporting is its standard practice. See Doc. No. 725-3. Therefore, sales of the infringing products shall be aggregated by quarter and interest shall be compounded quarterly.

Although this Court has found that Varian has made this litigation quite expensive and prolonged, this conduct does not rise to the level of bad faith. In fact, Varian's lawyers are very experienced and excellent in their craft. The Court further finds that it would not be equitable to award prejudgment interest on attorneys fees. *See Mathis*, 857 F.2d at 761. As discussed above, prejudgment interest is not meant to be punitive in nature. Such an award of prejudgment interest on attorneys fees would be punitive in nature and is not warranted in this case.

## VI. Ongoing Royalty

### A. Legal Standard

"The award of an ongoing royalty[5] instead of a permanent injunction to compensate for future infringement is appropriate in some cases." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192 (Fed. Cir. 2012) (citations omitted). A Court should allow the parties to negotiate an ongoing royalty. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007). If the parties fail to reach agreement, the Court may set the ongoing royalty. *Id*. The ongoing royalty must adequately compensate the patentee for the continued infringement of the patent. *Paice v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009) *aff'd by* 504 F.3d 1293. The Court is not bound by the royalty rate that the jury determined was appropriate for prejudgment infringement because of the possible changed bargaining positions of the parties. *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) (citations omitted). The Court must consider all relevant economic factors and give a clear explanation of its reasons for the ongoing royalty rate. *Paice,* 504 F.3d at 1315.

---

[5] The Court will conform to the practice of the United States Court of Appeals for the Federal Circuit and use the term "ongoing royalty" instead of "compulsory license."

B. *Analysis*

Pitt is not seeking a permanent injunction in this case.  Doc. No. 315 at 8.  At the

conclusion of the invalidity trial, this Court ordered the parties to negotiate in good faith an

ongoing royalty.  As indicated during the April 24, 2012 Post-Trial Conference, the parties failed

to reach agreement.  Doc. No. 863.  Therefore, this Court will exercise its discretion pursuant to

*Paice* and consider all of the applicable economic factors to determine an ongoing royalty rate

that adequately compensates Pitt for Varian's continued infringement of the '554 patent.

Pitt does not contend that there is new evidence that was not considered by the jury in the

damages portion of the trial that the Court should now consider when setting the ongoing royalty

rate.  Instead, Pitt argues that the circumstances have changed because of the decisions made by

the jury, and by this Court, following the damages portion of the trial.  However, the Court finds

that no changed circumstances exist which would warrant a higher ongoing royalty than that set

by the jury.

The jury was instructed to assume, for purposes of the damages portion of the trial, that

the '554 patent was valid and was being infringed by the RPM System and the Clinac and

Trilogy linear accelerators sold in combination with RPM Systems.  Thus, because the jury

found, in the third portion of the trial, that the claims of the '554 patent at issue in the damages

portion of the trial are, in fact, valid, there is no change in the circumstances from the jury's

award of a reasonable royalty.  The same is true with respect to this Court's Order on Varian's

indefiniteness defense.  Doc. Nos. 858 and 859.  Furthermore, the decision by this Court on the

issue of laches does not change the circumstances that the jury considered.  Doc. No. 731.  The

verdict form in the damages portion of the trial explicitly assumed that the Court would not

preclude recovery because of laches.  Doc. No. 666.  Thus, all that has occurred since the

20

damages portion of the trial is that the jury and/or the Court confirmed what the jury was to assume for that portion of the trial.

The cases that Pitt cites to support a higher ongoing royalty can all be distinguished from the case at bar. In *Amado*, an injunction had been issued prior to ongoing royalties becoming an option for district courts. 517 F.3d at 1356. The change in the bargaining position found in *Amado* was that the patentee was seeking a permanent injunction when such a remedy did not exist for sales that occurred prior to entry of final judgment. Here, there are no such changed circumstances because Pitt has never sought a permanent injunction. Additionally, the case at bar differs from *Paice* and *Affinity Labs of Texas, LLC v. BMW North America, LLC,* 783 F. Supp. 2d 891 (E.D. Tex. 2011), in the same manner that it differs from *Amado*. In *Paice* and *Affinity*, the patentees sought permanent injunctions, but neither patentee received a permanent injunction. *Id*. at 896; 609 F.Supp.2d at 622. These cases are only distinguishable from each other because *Amado and Paice* were decided in the transition period of the law regarding ongoing royalties while *Affinity* was decided after the law had been settled.

In *Bard*, Defendant's willful infringement was a factor in the Court's award of an ongoing royalty rate higher than the reasonable royalty awarded by the jury. 670 F.3d at 1193. However, a careful reading of the district court's opinion in *Bard* shows that the reason that the district court awarded a higher royalty was the interaction between the willful infringement and other factors that are not present in the case at bar. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 2009 WL 920300, at *4- 9 (D. Ariz. March 31, 2009) *aff'd by* 670 F.3d 1171. For example, the parties in *Bard* were direct competitors, and if the infringer stopped selling its product it would only help the patentee while hurting the infringer. In this case, both sides would be harmed if Varian stopped selling the infringing products. Varian would lose its

profit on the products while Pitt would lose the royalty that it would receive.  The Court finds that enhancement of damages and the awarding of attorneys fees are the correct punitive measurements for Varian's willful infringement and that the awarding of a higher ongoing royalty rate would not be equitable.

The Court also rejects Varian's argument that Pitt's bargaining position is weaker for an ongoing royalty than it was in the hypothetical negotiation during the damages portion of the trial.  As discussed above, there are some factors that decrease Pitt's bargaining power while other factors increase Pitt's bargaining power.  The Court finds that after weighing all of the relevant economic factors, the bargaining position of the two parties is the same for the ongoing royalty as it was for the hypothetical negotiation.

Finally, the Court finds that the reasonable royalty awarded by the jury will adequately compensate Pitt for Varian's continued infringement of the '554 patent, while leaving Varian with a substantial profit margin.  Although the Court, in this Opinion, will not go through a detailed analysis of the factors in *Georgia-Pacific Corp.* v. *United States Plywood Corp.,* 318 F.Supp. 1116 (S.D.N.Y. 1970), the Court presided over the trial on damages and read all of the expert reports pertaining to damages in their entirety.  The Court finds that the jury's verdict adequately considered all of the *Georgia-Pacific* factors, and that the jury's verdict is just.

In sum, the Court finds that there are no circumstances that have changed since the jury's verdict in the damages portion of the trial, or other evidence that the jury did not consider, which would justify departing from the royalty rates that the jury found to be reasonable.  Thus, the Court will impose an ongoing royalty of 10.5% for sales of RPM Systems and 1.5% for sales of Clinac and Trilogy linear accelerators sold in combination with the RPM Systems.

## VII.   Conclusion

Each party to a lawsuit has the right to rigorously pursue its position before this Court. Here, Varian has been permitted to defend itself through motion practice and three jury trials, but has been found to have willfully infringed Pitt's '554 patent.  Because of this determination, enhanced damages may be imposed to punish and deter the infringer.  After careful consideration of 35 U.S.C. § 284 and the *Read* factors, the Court finds that it is most appropriate to enhance the jury's $36.8 million verdict in the damages portion of the trial by a factor of 2 (*i.e.,* 200%).

Prejudgment interest in the amount of 6% per year, compounded quarterly, also will be awarded on the jury's damage award pursuant to 35 U.S.C. § 284.

Furthermore, because the Court finds that this is an exceptional case under 35 U.S.C. § 285, Pitt will be awarded reasonable attorneys fees.

An ongoing royalty of 10.5% for sales of RPM Systems and 1.5% for sales of Clinac and Trilogy linear accelerators sold in combination with the RPM Systems will be ordered.

An appropriate Order follows.

Dated: April 25, 2012

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:      All Registered ECF Counsel and Parties